CARLOS SABATER GARCÍA, Plaintiff and Appellee, *v.* THE UNION CENTRAL LIFE INSURANCE COMPANY, Defendant and Appellant.

No. 4730. Argued December 5, 1929.—Decided June 25, 1930.

*Manuel F. Rossy* for appellant. *José Sabater* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court

Carlos Sabater García mortgaged a property belonging to him and located in the municipal district of Mayagüez to The Union Central Life Insurance Co., which is a corporation domiciled in Cincinnati, Ohio, and authorized to do business in Puerto Rico, to secure a certain loan obtained by him from the said corporation.

The insurance company foreclosed the mortgage on the ground that Sabater had failed to pay the loan, and the prop-

erty was finally adjudicated to it in settlement of the debt. The foreclosure proceedings were taken in the District Court of Mayagüez.

In this situation, Sabater instituted the present action in said District Court whereby, relying on the grounds set forth in his complaint, he sought the annulment of the foreclosure proceedings taken against him by the insurance company, beginning with the demand for payment; and similarly the nullity of the order of sale, the public auction, the marshal's deed of sale in favor of the insurance company, together with the record thereof in the registry of property, which he prayed to have cancelled by a proper order.

After the filing of his complaint, plaintiff Sabater moved that a notice of the pendency of the action be recorded in the registry of property, and this was done accordingly by entering the notice on the margin of the record of the mortgaged property, which had been publicly sold and awarded in the said foreclosure proceedings.

Thereafter the court, on motion of plaintiff Sabater, ordered the summoning of the defendant company by publication, and the notices were published in the newspaper "El Sol" of Mayagüez. A copy of the summons was sent by mail to the defendant at its domicile in Cincinnati.

It was at this stage of the proceedings that the question presented by this appeal arose. The insurance company, through its attorney, appeared specially for the purpose of objecting to the jurisdiction of the court on the ground that, a personal action being involved and the company having its domicile outside the Island of Puerto Rico, it could not be summoned by publication.

The lower court decided this question as follows:

"After hearing, on the 6th instant, in open court the motion to quash the summons filed by the defendant, the court overrules the same, it appearing that the complaint filed in the present case has been recorded in the registry of property in accordance with section 91 of the Code of Civil Procedure (Cosme v. Santi-González, 37

P.R.R. 710), and the defendant is granted 20 days within which to answer the complaint.''

Thereupon the insurance company took an appeal to this court. The appellant contends that the action for nullity brought by Sabater is a personal action and, therefore, that the lower court, in deciding the question in the way it did, infringed the provisions of section 81 of the Code of Civil Procedure, in connection with sections 75, 76 and 77 of the same code, and the doctrine upheld by this court in *Huete* v. *Teillard,* 17 P.R.R. 46.

The appellee, on the other hand, maintains that the action instituted by him is a real action and cognizable by the District Court of Mayagüez, in whose district is located the mortgaged property, the judicial sale of which is sought to be annulled; and, further, that the summoning of the defendant by publication is valid because at the time the same was decreed notice of the complaint had already been entered in the margin of the record of the property conveyed to the defendant herein in the proceedings now sought to be avoided.

We think that the appellee is right, as the action prosecuted by him, if not real, partakes at least of the nature of a real action.

In his *"Diccionario Razonado de Legislación y Jurisprudencia"* (vol. 1, p. 192), Escriche says:

"REAL ACTION.—That which is founded on rights which are called real rights (*derechos reales*) such as, ownership (*dominio*), whether absolute (*pleno*) or qualified (*menos pleno*), heirship, servitudes, pledge, or mortgage. These are called real rights because they are not inherent in the person but in the thing itself, attaching and embodying themselves, so to speak, in it.

"Real actions can be brought by us against any possessor, whether known or unknown to us, or whether we have contracted with him or not; which is not the case with personal actions, which can be exercised by us against such persons with whom we have contracted, but not against third persons (*terceros*).

"A possessor against whom a real action lies is deemed to be not only the actual possessor of the thing, but also any wrongful

occupant who has ceased to possess it. Hence, if the defendant maliciously destroys or loses by his own fault the thing in suit, it must pay the value thereof together with the damages claimed under oath by the plaintiff and assessed by the court. (Law 19, Tit. 2, Part. 3.)

"As there are four categories of real rights, there are also four classes of action corresponding to those rights.

"The first class, founded on the right of ownership, includes three real actions, namely, revendication, which concerns the naked as well as the beneficial ownership; the *actio publiciana*, and the rescissory action, known as *in integrum restitutio*.

"The second class of real actions is based on heirship rights and includes two kinds of actions, viz: the action to collect an inheritance (*petición de herencia*) and the proceeding to contest a will (*querella de inoficioso testamento*), although it may be said that the latter is nothing else than a sort of action for the recovery of an inheritance.

"The third class, which relates to servitudes, includes the action for enforcing a servitude (*acción confesoria*) and the action of denial of servitude (*acción negatoria*). The action for enforcement (*confesoria*) originates in the servitude proper and it is a species of revendication. The action of denial (*negatoria*) does not originate in the servitude itself, but in the natural freedom of the estate; and on the same principles regulating the confessory and the negatory actions there are considered also as real actions those which seek to liberate the estate from any existing encumbrances, even though the latter may involve deliveries in kind, and all those wherein it is sought to enforce an obligation existing as a charge upon the estate although the identity of the debtors should not appear from the title, since the obligation is transferred to the possessor of the thing by the mere fact of possession. (Judgments of September 27, 1759, and March 9, 1861.)

"To the fourth class of real actions belong those which are founded on the right of pledge or mortgage,' considering the pledge or mortgage as a right in the thing itself and not as a contract, since a contract produces only a personal action. From this right of pledge or mortgage derive, according to the Roman law, two real actions, that is, the *actio Serviana,* so named after its inventor, and the *actio quasi Serviana* or action of mortgage. The former was special and the latter general; the *actio Serviana* was available in favor of the owner of a rural estate as against his tenant (*colono*) or any occupant of the property subjected to the payment of the

rent; and the *actio quasi Serviana* lay in favor of any creditor against his debtor or any possessor of the thing charged with the indebtedness, to follow it up and make effective thereon the collection of his credit. As the mortgage action (*acción hipotecaria*) embraces all cases, not even excepting that of the lessor of a rural property stipulating for a pledge or a mortgage, there is no distinction now being made between the *actio Serviana* and the *actio quasi Serviana,* and only the action of mortgage is recognized.''

In 22 Cyc. 1102 it is said:

''In Rem. A term applied to a proceeding where the process is served on the thing itself; a proceeding to determine the state, or condition, of the thing itself. In a strict sense, a term applied to a proceeding taken directly against property, having for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, a term applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein.''

It is true that the action herein is directed against the defendant insurance company; but what is really sought to be established by the suit is that the owner of the property in question is the plaintiff, and not the insurance company, which appears as such owner from the registry. If the plaintiff has any right, it must be derived from his ownership in the property unaffected by the void judicial proceedings instituted against him by the defendant herein.

The fact must not be overlooked that the action brought by the said insurance company against Sabater to foreclose its credit was the summary action authorized by the Mortgage Law in which, as stated in the case of *Anaud* v. *Martínez et al.,* 40 P.R.R. 641, 648, ''Except in the three negligible instances specified in article 175, the hands of the mortgage debtor are tied. He has no opportunity to be heard. He must meet the demand for payment in full within thirty days or suffer his property to be sold. The proceeding is purely *ex parte.* This has been held so frequently in this

jurisdiction, and in the earlier Louisiana cases, that authorities need not be cited."

As to the contention that the district court acquired jurisdiction by virtue of the recording of the complaint in the registry, we agree with the appellant that such recording was not equivalent to an attachment of the property of the defendant within the purview of the decision of the Supreme Court of the United States in *Pennoyer* v. *Neff*, 95 U. S. 14.

By reason of the foregoing, we are of the opinion that the order appealed from must ·be affirmed, not on the ground set forth therein, which is erroneous, but because there is involved the exercise of an action which, although not real, partakes at least of the nature of a real action.